CINCINNATI INSURANCE COMPANY, APPELLEE, *v.* PHILLIPS ET AL., APPELLANTS.

[Cite as Cincinnati Ins. Co. *v.* Phillips (1989), 44 Ohio St. 3d 163.]

(No. 88-401—Submitted March 15, 1989—Decided August 2, 1989.)
(Rehearing granted September 20, 1989.)

*Matthew J. Crehan* and *Thomas P. Erven,* for appellee.

*Young & Alexander Co., L.P.A.,* and *Mark R. Chilson,* for appellants Phillipses.

*John H. Metz,* for appellants Thompsons.

*Hamilton, Kramer, Myers & Cheek, James R. Gallagher* and *Emerson Cheek III,* urging affirmance for *amicus curiae,* State Farm Mutual Automobile Insurance Co.

HOLMES, J.   All parties in this case agree that the liability limits of the Phillipses' policy are at least $200,000, *i.e.,* $100,000 each for the bodily injuries suffered by Mr. Thompson and for the bodily injuries of Mrs. Thompson. The sole issue before us is whether the language within the policy provides for separate maximum coverages of $100,000 each for Mr. Thompson's survivorship claim and for the wrongful death action filed by Mrs. Thompson as the personal representative of Mr. Thompson. R.C. 2125.02(A)(1). For the reasons which follow, we answer such query in the negative, and affirm the court of appeals.

The liability coverage provision and the limits of liability provisions contained within the policy at issue herein are *identical* in all salient respects to the provisions contained within the policy issued by Buckeye Union Insurance Company at issue in *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d 716. Appellee's policy with the Phillipses provides, in pertinent part:

"AGREEMENT

"In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

"* * *

"PART A—LIABILITY COVERAGE

"INSURING AGREEMENT

"We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition

to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

" '**Covered person**' as used in this Part means:

"1. You or any **family member** for the ownership, maintenance or use of any auto (including a motorhome, truck, bus or motorcycle) or **trailer**.

"* * *

"LIMIT OF LIABILITY

"* * *

"A2. SPLIT LIABILITY LIMITS.

"The limit of liability shown in the Declarations for 'each person' for Bodily Injury Liability is our maximum limit of liability *for all damages for bodily injury sustained by any one person in any one auto accident.* Subject to this limit for 'each person' the limit of liability shown in the Declarations for 'each accident' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations for 'each accident' for Property Damage Liability is our maximum limit of liability for all damages to all property resulting from any one auto accident. This is the most we will pay regardless of the number of:

"1. **Covered persons**;

"2. Claims made;

"3. Vehicles or premiums in the Declarations; or

"4. Vehicles involved in the auto accident.

"* * *." (Emphasis added.)

The only material difference between this policy and the one at issue in *Tomlinson* (1989), *supra,* is one of degree: the limits of liability for bodily injury in the policy purchased by the Phillipses were $100,000 "each person" and $300,000 "each accident." In *Tomlinson,* where the limits of liability

for bodily injury were $25,000 "each person" and $50,000 "each accident," this court held that the language of the policy, when given its plain and ordinary meaning, permitted a separate claim for liability coverage only when a separate " 'bodily injury' " had been sustained by the claimant " '*in* any one auto accident.' " (Emphasis *sic.*) *Id.* at 13, 540 N.E. 2d at 718-719. In analyzing Mrs. Tomlinson's claim in that case, this court held that she was not entitled to a separate "each person" recovery for two alternative reasons: (1) a claim for the loss of consortium of a spouse is not a separate "bodily injury"; (2) even if damages for loss of consortium were considered a separate bodily injury, such damage to Mrs. Tomlinson was not suffered *in* her husband's accident.

Appellants concede that they are not seeking separate "each person" claims for each next of kin of Mr. Thompson, see R.C. 2125.02, and the policy language here would obviously preclude such separate recoveries as no next of kin, save Mrs. Thompson, sustained bodily injury *in* this accident. See *Tomlinson* (1989), *supra,* fn. 4. Our recent decision in *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089, is instructive, but distinguishable. The underinsured policy language at issue in *Wood* was significantly different in many respects from the liability coverage language at issue here, and provided recovery "for all damages *resulting from* any one accident" (emphasis added) rather than "for all damages * * * sustained * * * *in* any one auto accident" (emphasis added) as in this case. See *Wood, supra,* at 88, 526 N.E. 2d at 1091, fn. 2. Moreover, the *Wood* court recognized that "[o]nly an *insured* under the underinsured motorist provision can recover under the policy for injury or wrongful death." (Em-

phasis *sic.*) *Id.* at 91, 526 N.E. 2d at 1093. All three claimants in *Wood* were "covered persons under the policy" therein. *Id.*

However, we hold that, pursuant to the liability language of the policy issued by the Cincinnati Insurance Company here, only those persons who were actually *in* the accident are entitled to recover thereunder for bodily injury or wrongful death. Two such persons exist in this case: Mr. and Mrs. Thompson.

Appellants argue that the "each person" limitation used in appellee's policy should apply both individually for Mr. Thompson's survival claim for pain and suffering *and* for the wrongful death action which resulted from his demise. We find such an argument contrary to the plain and ordinary meaning of the split liability limits of this policy. *Tomlinson, supra,* at 13-14, 540 N.E. 2d at 718-719.

It is well-established that an action for wrongful death is distinct from a survivorship action. *Prem* v. *Cox* (1983), 2 Ohio St. 3d 149, 2 OBR 694, 443 N.E. 2d 511; *May Coal Co.* v. *Robinette* (1929), 120 Ohio St. 110, 116, 165 N.E. 576, 578; *Klema* v. *St. Elizabeth's Hospital of Youngstown* (1960), 170 Ohio St. 519, 11 O.O. 2d 326, 166 N.E. 2d 765. However, the limit of liability coverage in the Phillipses' policy is determined by the number of persons injured in any one accident, and not by the number of maintainable causes of action or number of persons incurring damage as a result of the injuries to the persons actually in the accident. The clear language of the Phillipses' policy provides separate liability coverage up to $100,000 on account of each person, up to three, who sustains bodily injury in any one auto accident. Thus, if only two persons sustain bodily injury in any one auto accident, as here, then only two separate claims may be made against the policy, regardless of the number of causes of action or type of damage which arose out of such bodily injury. Such a single-person limitation is a valid restriction of automobile liability insurance coverage. *Tomlinson, supra,* at paragraph one of the syllabus.

Mr. Thompson suffered bodily injury,[3] which proved to be fatal, and thus only one claim, up to $100,000, may be filed against the policy for all damages which arose out of his injury, notwithstanding the fact that two distinct causes of action for damages arose out of such bodily injury. In addition, Mrs. Thompson suffered bodily injury in the same auto accident, and thus there is a separate, single claim against the policy, up to the amount of $100,000. Inasmuch as no other persons sustained bodily injury in this auto accident, no other claims lie against the liability coverage of the policy.

For all the foregoing reasons, the

---

[3] As noted by the court of appeals, "[a]lthough the policy contains no precise definition of bodily injury, we find, in examining the policy as a whole, that Part B, dealing with medical payments coverage, provides for CIC to '* * * pay reasonable expenses incurred for necessary medical * * * and *funeral services because* of *bodily injury* * * *.' Clearly, this section's language reflects an intent that medical expenses both contemplate and include those expenses associated with any degree of bodily injury including that which ultimately results in death. The term 'bodily injury,' as used in the policy, contemplates death in addition to other degrees and levels of injury." (Emphasis *sic.*) See, also, R.C. 3937.18, which mandates such language in uninsured and underinsured motorist coverage.

judgment of the court of appeals is affirmed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion on the issue of the Thompsons' daughter's claim.

*Judgment affirmed.*

MOYER, C.J., and WRIGHT, J., concur.

H. BROWN, J., concurs in judgment.

SWEENEY, DOUGLAS and RESNICK, JJ., dissent.

H. BROWN, J., concurring. I do not believe that the result reached by the majority does violence to our decision in *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089. *Wood, supra,* stands for the proposition that each beneficiary in a wrongful death action has a separate claim.[4] The issue in the case before us does not turn on the question of separate claims, but rather on the language in the policy limiting claims (whether or not separate) arising from bodily injury. Such limitations can be made if they are plain and unambiguous. See *Dues* v. *Hodge* (1988), 36 Ohio St. 3d 46, 521 N.E. 2d 789.

As the majority observes, the language in the policy in this case is the same as that in *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d

716. My views on that language are expressed in *Tomlinson, supra.* However, in order to avoid the incongruity of issuing conflicting opinions within the space of two months, I yield to the doctrine of *stare decisis* and concur in the judgment.

DOUGLAS, J., dissenting. I must dissent from the holding of the majority because of the absurdity of the result. Indeed, I predict that today's holding will, once again, create more problems than it solves.

The majority opinion, in effect, allows the Thompsons' wrongful death claim to be combined, under a single limit of liability, with other injuries suffered. This holding is purportedly based on the authority of *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d 716. The majority refuses to recognize, however, that the holding in *Tomlinson, supra,* which was based on *Dues* v. *Hodge* (1988), 36 Ohio St. 3d 46, 521 N.E. 2d 789, allowed a loss of consortium claim to be combined with bodily injuries and subject to a single limit of liability. A wrongful-death claim is, quite obviously, a very different matter than a loss-of-consortium claim because the right to collect for wrongful death emanates from statutory law, specifically R.C. 2125.01 and 2125.02.

In *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089, we held that "[e]ach person entitled to collect damages pursuant to R.C. 2125.02

_____

[4] In my view the analysis of R.C. 3937.18 in *Wood, supra,* served only the purpose of supporting the argument (which was persuasive to me without recourse to R.C. 3937.18) that each beneficiary in a wrongful death action is possessed of separate claims. To the extent that the syllabus law and the opinion in *Wood* reach beyond this proposition, I would modify the language in *Wood.* This is a difficult area of the law and that difficulty confronts us each time a new case presents the issues in a slightly different context. In part, the difficulty in reconciling our opinion in the present case, in *Wood,* in *Tomlinson* and indeed in similar cases stems from variations in policy language.

for wrongful death, * * * has a separate claim and such separate claim may not be made subject to a single person limit of liability * * *." Even if we accept the majority's premise that the Phillipses are insured only against claims of persons who were actually in the accident, Mrs. Thompson was involved in the accident and does have a wrongful-death claim that, pursuant to *Wood, supra,* cannot be combined with other damages and limited to a single person limit of liability.

Admittedly, the analysis of *Wood, supra,* arose from the perspective of uninsured and underinsured motorist coverage rather than liability coverage. It is from the uninsured and underinsured coverage perspective, however, that we can best see the problems that the majority's holding creates.

"* * * [T]he legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." *Bartlett* v. *Nationwide Mut. Ins. Co.* (1973), 33 Ohio St. 2d 50, 52, 62 O.O. 2d 406, 408, 294 N.E. 2d 665, 666. The logic of the holding in *Bartlett* is distorted by today's holding, however, because an injured person can assert more claims against her own uninsured and underinsured coverage, pursuant to *Wood, supra,* than she can against the tortfeasor's liability coverage. In short, today's holding reaches the absurd result of an injured party being *better* off when struck by an uninsured tortfeasor than by a person with liability insurance.

Indeed, we can look forward to the prospect of numerous suits being filed against an injured party's underinsured motorist coverage carrier because of the majority's unrealistic interpretation of the tortfeasor's liability insurance policy. "* * * [W]hen * * * the actual amount payable to an injured party under the tortfeasor's policy is less than the insured's policy limits, the tortfeasor is an underinsured. * * *" *Brown* v. *Erie Ins. Co.* (1986), 35 Ohio App. 3d 11, 12, 519 N.E. 2d 408, 410. Those denied payment of a wrongful death claim by the tortfeasor's liability insurer will certainly file an underinsured claim with their own carrier, knowing that they are entitled to payment pursuant to *Wood, supra.*

Had Rosa Phillips been uninsured, the Thompsons would have been able to maintain against their own insurer a *separate* claim for wrongful death. It only makes sense for the tortfeasor's liability insurer to be subject to the same burden. The remaining $100,000 of the liability insurance policy should be made available to satisfy the Thompsons' separate claim for wrongful death.

There is yet a second reason why the tortfeasor's own insurance policy should be available to meet the Thompsons' claims for wrongful death. The policy in question states that "[w]e will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident * * *."

By today's majority decision, the tortfeasor suddenly discovers that this language does not really mean what it says. Just because coverage for the wrongful death claims is not afforded the tortfeasor does not mean that her liability for the wrongful death is at an end. The tortfeasor remains responsible individually for the wrongful death claims and if she is collectible beyond the policy limits afforded, then she will have to respond either directly to the Thompsons or to their carrier, by way

of subrogation, after payment is made to the Thompsons by their own carrier pursuant to their uninsured and underinsured coverage. Thus, the tortfeasor here, whose husband purchased insurance coverage containing the quoted language in order to prevent such personal liability, is left, by the majority opinion, "hung out to dry."

For all the foregoing reasons, I must respectfully dissent.

SWEENEY and RESNICK, JJ., concur in the foregoing dissenting opinion.