CINCINNATI INSURANCE COMPANY, APPELLEE, v.
PHILLIPS ET AL., APPELLANTS.

[Cite as Cincinnati Ins. Co. *v.* Phillips (1990), 52 Ohio St. 3d 162.]

(No. 88-401—Submitted February 13, 1990—Decided July 3, 1990.)

*Baden, Jones, Scheper & Crehan*

Co., *L.P.A.*, and *Thomas P. Erven,* for appellee.

*Young & Alexander Co., L.P.A.,* and *Mark R. Chilson,* for appellants Phillipses.

*John H. Metz,* for appellants Thompsons.

*Hamilton, Kramer, Myers & Cheek* and *James R. Gallagher,* urging affirmance for *amicus curiae,* State Farm Mutual Automobile Insurance Co.

*Martha A. Churchill,* urging affirmance for *amicus curiae,* Mid-America Legal Foundation.

SWEENEY, J. Upon rehearing the cause before us, we believe that this court's original decision in *Cincinnati Ins. I* was clearly erroneous and would, if not rectified, create much confusion in this difficult area of the law. Since we firmly believe that Ohio law as interpreted in our prior decision in *Wood v. Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089,.demands that the wrongful death statutes (R.C. 2125.01 and 2125.02)[2] not be abridged in any manner whatsoever, we reverse the decision of the court of appeals below.

The liability policy issued by appellee to the Phillipses provides in pertinent part:

"AGREEMENT

damages, notwithstanding the death of the person injured * * *."

R.C. 2125.02(A)(1) provides as follows:

"An action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."

---

[2] R.C. 2125.01 provides in pertinent part:

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for

"In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

"* * *

## "PART A — LIABILITY COVERAGE

### "INSURING AGREEMENT

"We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

" 'Covered person' as used in this Part means

"1. You or any **family member** for the ownership, maintenance or use of any auto (including a motorhome, truck, bus or motorcycle) or **trailer.**

"* * *

### "LIMIT OF LIABILITY

"A2. SPLIT LIABILITY LIMITS.

"The limit of liability shown in the Declarations for 'each person' for Bodily Injury Liability is our maximum limit of liability *for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for 'each person' the limit of liability shown in the Declarations for 'each accident' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.* The limit of liability shown in the Declarations for 'each accident' for Property Damage Liability is our maximum limit of liability for all damages to all property resulting from any one auto accident. This is the most we will pay regardless of the number of:

"1. **Covered persons;**

"2. Claims made;

"3. Vehicles or premiums in the Declarations; or

"4. Vehicles involved in the auto accident.

"* * *" (Emphasis added.)

The monetary limits of the foregoing policy provided $100,000 for "each person" and $300,000 for "each accident."

In *Cincinnati Ins. I,* the majority was apparently persuaded by the fact that the language contained in the Phillipses' policy with appellee was identical to the language of the policy reviewed in *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d 716. However, as Justice Douglas noted in his well-reasoned dissenting opinion in *Cincinnati Ins. I, supra,* at 167, 541 N.E. at 1054, the holding in *Tomlinson* merely permitted a loss of consortium claim to be combined with bodily injury claims and subject to a single limit of liability, whereas in the cause *sub judice,* we are confronted with a wrongful death claim which is subject to the statutory directives provided in R.C. 2125.01 and 2125.02. Thus, notwithstanding the present majority's disagreement with the rationale underlying the *Tomlinson* decision, we find that cause to be readily distinguishable from the instant case based on the dissimilar character of the claims advanced by the parties in each case. We also note that it can be argued that *Tomlinson* is of questionable validity, given the fact that the vote in *Tomlinson* was sharply divided and that the majority therein is not the same as the majority in the cause *sub judice.* Nevertheless, even if we assume that *Tomlinson* was correctly decided, its import has absolutely no bearing on the instant cause based on the differing types of claims advanced by the parties.

In determining the limits of liabili-

ty of the policy in issue, we note that in *Wood, supra,* this court held that "[e]ach person entitled to collect damages pursuant to R.C. 2125.02 for wrongful death * * * has a separate claim and such separate claim may not be made subject to a single person limit of liability * * *." As explained by Justice Douglas in *Cincinnati Ins. I,* even assuming, *arguendo,* that the instant policy insured the Phillipses only against the claims of persons who were physically involved in the accident, it is clear that Mrs. Thompson was involved in the accident and should have a wrongful death claim as a surviving spouse that, pursuant to *Wood, supra,* cannot and should not be combined with other damages and limited to a single-person limit of liability.

The fact that *Wood* involved uninsured and underinsured motorist coverage and not liability coverage does not diminish either its efficacy or applicability to the instant factual situation. Once again, as pointed out by Justice Douglas in *Cincinnati Ins. I,* it would make no sense for this court to reach the absurd result that an injured party is better off when struck by an uninsured tortfeasor than by a person who possesses liability insurance. Yet that is precisely what the law of Ohio would be if the holding in *Cincinnati Ins. I* is not reversed by this court. For example, if Mrs. Phillips had been uninsured, the Thompsons would have been able to maintain a separate claim for wrongful death against their own insurer based on the language of R.C. 2125.02 as construed by this court in *Wood, supra.* In addition, if *Cincinnati Ins. I* is left undisturbed, those denied payment of a wrongful death claim by a tortfeasor's liability insurer will most certainly file an underinsured claim with their own insurance carrier since *Wood, supra,* entitles the victim(s) of the tortious act to make such a claim.

In any event, perhaps one of the more compelling reasons for reconsidering and vacating the decision rendered in *Cincinnati Ins. I* is a clear interpretation of the plain language set forth in the Phillipses' policy which states: "[w]e will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. * * *" In this vein, the holding of *Cincinnati Ins. I* completely undermines the thrust of the foregoing contractual language. As observed in Justice Douglas' dissenting opinion in *Cincinnati Ins. I,* the consumer of a liability insurance policy would receive less than he or she bargained for if the erroneous decision in *Cincinnati Ins. I* is not reexamined and rectified:

"By today's majority decision, the tortfeasor suddenly discovers that this language does not really mean what it says. Just because coverage for the wrongful death claims is not afforded the tortfeasor does not mean that her liability for the wrongful death is at an end. The tortfeasor remains responsible individually for the wrongful death claims and if she is collectible beyond the policy limits afforded, then she will have to respond either directly to the Thompsons or to their carrier, by way of subrogation, after payment is made to the Thompsons by their own carrier pursuant to their uninsured and underinsured coverage. Thus, the tortfeasor here, whose husband purchased insurance coverage containing the quoted language in order to prevent such personal liability, is left, by the majority opinion, hung out to dry." *Id.* at 168-169, 541 N.E. 2d at 1055.

In our view, the fairest and most logical course for this court is to reject the majority reasoning in *Cincinnati Ins. I* and to reaffirm the mandate of the General Assembly in the wrongful death statutes as interpreted in *Wood,*

*supra.* Under the facts of this case, the Thompsons have at least three justiciable claims as noted by the trial court: (1) Mr. Thompson's personal injury/survivorship claim; (2) Mrs. Thompson's personal injury claim; and (3) the wrongful death claim.

Therefore, based on all the foregoing we hold that each person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death has a separate claim and such separate claims may not be made subject to the single-person limit of liability in a tortfeasor's liability insurance policy.[3]

Accordingly, the judgment rendered by this court in *Cincinnati Ins. I* is vacated and held for naught.

The judgment of the court of appeals is reversed and the judgment of the trial court is hereby reinstated.

*Judgment reversed.*

DOUGLAS and RESNICK, JJ., concur.

H. BROWN, J., concurs in judgment.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

H. BROWN, J., concurring. I join the judgment in this case, but cannot subscribe to the opinion which is tendered in support of the judgment.

I join the judgment because the applicable policy language states:

"The limit of liability shown in the Declarations for 'each person' for Bodily Injury Liability *is our maximum limit of liability for all damages for bodily injury* sustained by any one person in any one auto accident. * * *" (Emphasis added.)

These words should be given their plain meaning. The limit applies only to "damages for bodily injury." Claims for wrongful death (and loss of consortium) are not claims "for bodily injury" although they may be claims arising out of bodily injury. Thus the limit does not apply.[4]

This court should not judicially rewrite the language of insurance policies to protect the insurer. To do so violates deeply ingrained principles of contract and insurance law. *King* v. *Nationwide Ins. Co.* (1988), 35 Ohio St. 3d 208, 519 N.E. 2d 1380, syllabus; *Faruque* v. *Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St. 3d 34, 31 OBR 83, 508 N.E. 2d 949, syllabus; *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95, 68 O.O. 2d 56, 313 N.E. 2d 844, syllabus; *Smith* v. *Eliza Jennings Home* (1964), 176 Ohio St. 351, 355, 27 O.O. 2d 305, 307, 199 N.E. 2d 733, 735-736.

However the opinion goes beyond that and seeks, essentially, to overrule our holding of April 25, 1990 in *Hill* v. *Allstate Ins. Co.* (1990), 50 Ohio St. 3d 243, 553 N.E. 2d 658. This the submitted opinion tries to accomplish without mentioning *Hill, supra. Hill* is not overruled, however, because the attempt lacks the agreement of four justices.

---

[3] Contrary to the assertion of one of the dissenting opinions herein, the majority in *Hill* v. *Allstate Ins. Co.* (1990), 50 Ohio St. 3d 243, 553 N.E. 2d 658, did not overrule the syllabus law in *Wood, supra.* A clear reading of the syllabus and majority opinion in *Hill* reveals that they definitely *"distinguished and explained"* the well-reasoned decision in *Wood, supra.* (Emphasis added.)

[4] The identical language is contained in the policy at issue in *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d 716. Thus, I believe that today's decision should be read as overruling *Tomlinson.*

In short, I believe: (1) that wrongful death claimants do have separate claims under R.C. 2125.02 (A)(1); (2) that under R.C. 3937.18 an insurance carrier may apply a single limit to separate claims arising out of a single bodily injury provided the policy limitation tracks the corresponding limitation on liability coverage; but (3) that insurance companies have the burden of stating policy limitations clearly and unambiguously.

HOLMES, J., dissenting. I must emphatically dissent from the judgment of the majority, for the reasons stated in my original majority opinion in this case, *Cincinnati Ins. Co.* v. *Phillips* (1989), 44 Ohio St. 3d 163, 541 N.E. 2d 1050. The plain and ordinary meaning of the split liability limits of this policy limits coverage to "the number of persons injured *in* any one accident, and not * * * the number of maintainable causes of action or number of persons incurring damage as a result of the injuries to the persons actually in the accident." (Emphasis added.) *Id.* at 166, 541 N.E. 2d at 1053.

I feel certain that the bench and bar of this state will be disturbed at this turnaround. The plurality's reliance on *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089, is totally misplaced as seen in *Hill* v. *Allstate Ins. Co.* (1990), 50 Ohio St. 3d 243, 246, 553 N.E. 2d 658, 661, and in Justice Brown's concurrence in this case.

One overriding principle is readily gleaned from our recent decisions except for *Wood:* "An automobile liability insurance provision that limits coverage for all damages arising out of bodily injury, *including death,* sustained by one person to a single limit of liability is a valid restriction." (Emphasis added.) *Burris* v. *Grange Mut. Cos.* (1989), 46 Ohio St. 3d 84, 545 N.E.

2d 83, paragraph one of the syllabus. The principle that limits on insurance for claims arising from bodily injury can be made, if such limits are plain and unambiguous, is established law in this state, regardless of whether such limits are found in the liability provisions or the uninsured-underinsured provisions of an automobile policy, and notwithstanding the syllabus in *Wood, supra,* and today's plurality opinion. *Dues* v. *Hodge* (1988), 36 Ohio St. 3d 46, 521 N.E. 2d 789; *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d 716; *Cincinnati Ins. Co., supra,* at 167, 541 N.E. 2d at 1054 (H. Brown, J., concurring); *Burris, supra; Hill, supra,* at 246, 553 N.E. 2d at 661-662. The statute clearly permits appellee to contract in this fashion. See *Tomlinson, supra,* paragraph one of the syllabus.

The plain and unambiguous split liability limit within the policy herein, which limit is identical to that found within the policy at issue in *Tomlinson, supra,* compels the conclusion reached by a majority of this court on August 2, 1989. I thus dissent from the judgment reached upon rehearing in this case today.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

WRIGHT, J., dissenting. I concur in the thrust and content of Justice Holmes' dissent. I also agree with the three-point test outlined in Justice Brown's concurrence. However, I find no real ambiguity here. Actually, this case's only real significance is found in the fact that the majority of this court has reaffirmed our holding in *Hill* v. *Allstate Ins. Co.* (1990), 50 Ohio St. 3d 243, 553 N.E. 2d 658, which case overruled the syllabus law in *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089.