STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT, *v.*
WEBB, APPELLEE.

[Cite as State Farm Mut. Auto. Ins. Co. *v.* Webb (1990), 54 Ohio St. 3d 61.]

(No. 89-1265—Submitted June 5, 1990—Decided October 10, 1990.)

*Cash, Cash, Eagen & Kessel, Robert B. Cash* and *John R. Wykoff,* for appellant.

*Lawrence & McGrath, James B. McGrath, Jr.* and *James E. Thaxton; Butkovich, Schimpf, Schimpf & Ginocchio* and *Richard J. Schimpf,* for appellee.

WRIGHT, J. This case requires a review of the proper construction to be given to the phrase "legally entitled to recover" as used in R.C. 3937.18(A), as well as the phrase within the policy here, "legally entitled to collect." We hold that since Webb is not legally entitled to recover from Creekmore due to the fellow-employee immunity provided by R.C. 4123.741, Webb may not recover upon the uninsured motorist provisions of the policy issued him by State Farm. Thus, we must reverse the judgment of the court of appeals and overrule our prior holding in *Thiel.*

Prior to the court's opinion in *Thiel,* this court decided *York* v. *State Farm Fire & Cas. Co.* (1980), 64 Ohio St. 2d 199, 18 O.O. 3d 412, 414 N.E. 2d 423. In *York,* the plaintiffs were injured when a city-owned fire truck, responding to an emergency call, collided with their vehicle. The insurers of the city and the driver of the fire truck denied legal liability for plaintiffs' claims pursuant to former R.C. 701.02, which granted immunity to members of the fire department while responding to an emergency. The plaintiffs' insurers also denied a claim filed by plaintiffs for uninsured motorist coverage based upon policies containing language almost identical to the language of Webb's policy. We held that the insurers were not liable because the city's immunity was dispositive of the case. In *York,* we stated that "* * * [t]he uninsured motorist coverage is to apply only in those situations in which the 'lack of liability insurance' is the reason the claim goes uncompensated, and not when the claim goes uncompensated because of the lack of liability due to the substantive laws of Ohio." (Emphasis deleted.) *Id.* at 202, 18 O.O. 3d at 414, 414 N.E. 2d at 425.

In *Thiel, supra,* the majority asserted two questionable rationales to explain why the holding in *York* would

not be applicable. First, it maintained that there is a difference between the immunity provided in *York* under former R.C. 701.02(B), which the court labeled "absolute immunity" and the immunity provided under workers' compensation per R.C. 4123.741, which the majority labeled as "conditional immunity." The second rationale given by the majority in *Thiel* for their holding was that R.C. 3937.18(F), which provides that the "coverages required by this section shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury or death," must be read *in pari materia* with R.C. 4123.741, which would prevent the transfer of the fellow-employee immunity from the negligent co-worker to the uninsured motorist coverage carrier.

We reject the reasoning in *Thiel* as to both points noted above. First, we restate and adopt the language of Justice Holmes' dissent in *Thiel* that "[t]he claimed dichotomy between the so-called absolute immunity in *York* and the 'conditional immunity' under R.C. 4123.741 is surely a distinction without any difference. All statutory immunities are, at some point, 'conditioned' upon the actions of the parties. In *York,* there needed to be some determination that the city vehicle was indeed on an emergency run before the issue of immunity was foreclosed as a matter of law by R.C. 701.02(B). Likewise, in the case here, immunity under R.C. 4123.741 is 'conditioned' upon a determination that the co-employee is entitled to workers' compensation. At the point when the im-

munity is obtained, there is nothing at all conditional about it. Any claim filed after such immunity is established is ineffective against the party so protected. * * *" *Thiel, supra,* at 113, 23 OBR at 271, 491 N.E. 2d at 1125.

Second, the majority in *Thiel* erred in its analysis of the effect of the fellow-employee immunity statute, R.C. 4123.741, upon the phrase "legally entitled to recover" of R.C. 3937.18(A)(1), by the *in pari materia* reading of the provisions of R.C. 3937.18(F),[3] which provides that the amount of uninsured motorist coverage to be paid to a party is not subject to an exclusion or reduction because of workers' compensation benefits. The rule of statutory construction of *in pari materia* is applicable only when the terms of a statute are ambiguous or its significance is doubtful. The language of R.C. 4123.741 is simply not ambiguous and requires no construction. The words in their common and ordinary sense have but one reasonable meaning — that one fellow employee is not entitled to recover damages from another arising out of injuries received at the work place in the course of their employment.

In putting to rest the *Thiel* majority's *in pari materia* analysis of R.C. 3937.18(F), we must again refer to the language of the dissent in *Thiel*:

"In order to observe 'a fundamental rule of statutory construction,' we are invited, via the majority's *in pari materia* analysis, to conclude that R.C. 3937.18(F) 'expressly prohibits the exclusion or reduction of benefits payable' due to a workers' compensation award. It is immediately apparent that the majority treats subsection (F)

---

[3] R.C. 3937.18(F) provides:
"The coverages required by this section shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury or death."

as a general prohibition, in conflict with the express grant of immunity provided in R.C. 4123.741. The only means found of reconciliation is to broadly strip insurers of the immunities which they, through subrogation, have a legal right to depend upon. Unfortunately, there was never any conflict between the two statutes or their underlying legislative intent.

"R.C. 3937.18 applies, in clear, precise terms, to 'automobile liability or motor vehicle liability polic[ies] of insurance * * * [which are] delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state * * *.' What follows are provisions to be included in the policies so issued, *i.e.,* uninsured and underinsured motorist coverages. The subsections (B), (F) and (G) clearly apply to such policies and not to statutory immunities. That this is so is evidenced by their references to 'coverages' mandated to be provided in policies of insurance by R.C. 3937.18.

"The phrase 'shall not be made subject to an exclusion or reduction in amount' in R.C. 3937.18(F) also indicates the legislative intent to apply this subsection to insurance provisions only. The term 'immunity' is utilized to describe the protections which statutorily withhold liability and thereby protect a particular class, whether under workers' compensation or a particular tort theory. Neither of the terms 'exclusion' or 'reduction' is ever utilized to describe such statutory protections. No statute anywhere provides for a 'reduction' in insurance on account of a workers' compensation recovery. On the other hand, in the context of insurance policies, the term 'exclusion' is commonly utilized and readily understood to refer to limitations on the scope of coverage in a particular policy. The same may be said

for the term 'reduction in amount.' Therefore, the meaning of this statute, plain upon its face, is that there can be no provision in uninsured or underinsured coverages which creates an exclusion to, or reduction in, amount of coverage because of a workers' compensation award. This has nothing whatsoever to do with the immunity provided under R.C. 4123.741." *Id.* at 113-114, 23 OBR at 271-272, 491 N.E. 2d at 1125.

In that the reasons given by the *Thiel* majority to distinguish *York* are inapplicable, it follows that the reasoning in *York* sets the appropriate legal standards. Those standards are appropriately noted in *Kaiser* v. *Strall* (1983), 5 Ohio St. 3d 91, 93, 5 OBR 143, 144-145, 449 N.E. 2d 1, 2, where we stated that "* * * [t]he applicable statutory provision[s] * * * [are] neither ambiguous nor confusing. It is not, therefore, this court's duty to interpret the statute[s]; we need only apply * * * [their] explicit decree. * * *"

There is an additional significant problem with the holding in *Thiel.* The "conditioned"-"absolute" immunity dichotomy was not only arbitrary, but undermined the traditional principles of subrogation which have long been recognized as an insurer's derivative right. It is a universal legal maxim that an insurance company must be able to assert the same defenses as the party for whose injurious action it is requested to provide compensation. There is no reason why carriers should be refused the right to assert the very same rights and defenses available to the person whose alleged negligence they are required to indemnify. See *Nobles* v. *Wolf* (Apr. 10, 1989), Sandusky App. No. S-88-18, unreported, affirmed today in 54 Ohio St. 3d 75, 562 N.E. 2d 144, where the court of appeals chose to treat the majority holding in *Thiel* as an aberration.

Appellant has been placed in a position that would require it to provide compensation to its insured pursuant to uninsured motorist coverage despite the fact that the tortfeasor's insurance carrier, Grange, appears to have successfully raised the fellow-employee immunity doctrine as a defense. The carrier would thus be prohibited from pursuing its subrogation rights against the wrongdoer. Such results are contrary to uninsured motorist coverage, and substantially impair the contractual relation between appellant and its insured.

Accordingly, we hold that an insurer is not liable to its insured on an uninsured motorist claim where the claim arises from an accident in which the tortfeasor motorist causing the insured's injuries has liability insurance but is immune pursuant to the statutory fellow-employee doctrine, because the insured is not legally entitled to a recovery from the tortfeasor.

For all of the foregoing reasons, we hereby overrule *Thiel* v. *Allstate Ins. Co.* (1986), 23 Ohio St. 3d 108, 23 OBR 267, 491 N.E. 2d 1121, reverse the judgment of the court of appeals, and enter judgment for appellant.

*Judgment reversed.*

MOYER, C.J., HOLMES and H. BROWN, JJ., concur.

RESNICK, J., concurs in part and dissents in part.

SWEENEY and DOUGLAS, JJ., dissent.

H. BROWN, J., concurring. I concur in the syllabus, judgment, and opinion of the majority. I write separately to join my colleague Justice Resnick in calling upon the General Assembly to review and clarify public policy with regard to the law pertaining to uninsured and underinsured motorist coverage. The legislature may want to reexamine the phrase "legally entitled to recover" in light of our decision today.

This court has recently wrestled with several difficult issues stemming from this area of the law.[4] Nonetheless, some uncertainty continues to plague our interpretation of the relevant statutes.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. I concur with the majority in overruling *Thiel* v. *Allstate Ins. Co.* (1986), 23 Ohio St. 3d 108, 23 OBR 267, 491 N.E. 2d 1121. However, I must respectfully dissent from the remainder of the syllabus, opinion and judgment. In my view, the majority does not provide an adequate analysis to what I believe are increasingly important issues regarding automobile insurance law in Ohio. I state this for several reasons. The first is that these are difficult issues which require an in-depth examination. These issues are not of first impression to this court, and they also have been considered by courts in other jurisdictions. Secondly, the attention of the General Assembly needs to be directed to the serious problems which exist in the areas of both uninsured and underinsured motorist coverage. My

---

[4] In addition to the case now before us, see, *e.g., Cincinnati Ins. Co.* v. *Phillips* (1990), 52 Ohio St. 3d 162, 556 N.E. 2d 1150, reversing (1989), 44 Ohio St. 3d 163, 541 N.E. 2d 1050 (application of per-person liability limits to wrongful death claims); *State Farm Mut. Ins. Co.* v. *Blevins* (1990), 49 Ohio St. 3d 165, 551 N.E. 2d 955 (recovery of punitive damages under uninsured motorist coverage).

analysis, however, will be confined to issues of uninsured motorist coverage since that is what is involved in this case. Finally, in the absence of a clear legislative mandate I shall attempt to furnish the bench and bar with some guidance and clarity in this area.

As initially stated, I concur with the majority in overruling *Thiel, supra.* The rationale relied upon therein cannot withstand critical analysis. Whether the immunity is absolute or conditional is of no relevance to the issues raised in this context. The fact that immunity has attached is all that need be determined. Additionally, it is of no consequence that immunity arises from a statute or at common law.

Likewise, *Thiel's* reading of R.C. 4123.741 *in pari materia* with R.C. 3937.18 is also improper. The language of R.C. 4123.741 is clear and requires no resort to judicial construction. However, the issues confronting this court are squarely presented within the four corners of the automobile insurance contract, and the focus of this case requires an examination of R.C. 3937.18, which mandates uninsured/underinsured motorist coverage. The fact that immunity originates from the operation of R.C. 4123.741 is merely incidental. The broader question before this court is whether *any* tortfeasor's immunity will defeat a claim for uninsured motorist coverage under an automobile insurance contract, regardless of how the immunity arises.

## I

As noted above, the gravamen of this case emanates from the contractual relationship between Webb and State Farm Mut. Auto. Ins. Co. Specifically, the issues revolve around the uninsured motorist coverage as mandated by R.C. 3937.18. Therefore, a review of prior case law interpreting this statute is warranted.

## A

This court first examined the legislative purpose of R.C. 3937.18 through a trilogy of cases in the early 1970s, beginning with *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 51 O.O. 2d 229, 258 N.E. 2d 429. Therein, this court stated as follows:

"Uninsured motorist coverage is a relatively new adjunct to the automobile insurance policy, and is designed to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability insurance coverage, would otherwise go uncompensated." *Id.* at 165, 51 O.O. 2d at 231, 258 N.E. 2d at 432.

One year later in *Curran* v. *State Automobile Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 54 O.O. 2d 166, 266 N.E. 2d 566, the legislative purpose quoted above was reiterated and expanded to include the following:

"R.C. 3937.18 itself indicates that uninsured motorist coverage is 'for the protection of *persons insured* thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *.' (Emphasis added.)

"Given this express statutory purpose, we are of the opinion that the uninsured motorist statute *should be construed liberally* in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists." (Emphasis added.) *Id.* at 38, 54 O.O. 2d at 169, 266 N.E. 2d at 569.

The last case in this trilogy is *Bartlett* v. *Nationwide Mut. Ins. Co.* (1973), 33 Ohio St. 2d 50, 62 O.O. 2d 406, 294 N.E. 2d 665. In *Bartlett*, the court set forth what has now become a

classic statement of the central import of R.C. 3937.18:

"The basic purpose of R.C. 3937.18 is clear. It 'is designed to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated.' *Abate* v. *Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, 165, 258 N.E. 2d 429; *Curran* v. *State Automobile Mutl. Ins. Co.* (1971), 25 Ohio St. 2d 33, 266 N.E. 2d 566; * * * In other words, the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance.

"* * *

"As suggested by *Abate* and *Curran, supra,* R.C. 3937.18, *ab initio,* enunciated a public policy in this state. Private parties are without power to insert enforceable provisions in their contracts of insurance which would restrict coverage in a manner contrary to the intent of the statute." (Footnotes omitted.) *Id.* at 52-53, 62 O.O. 2d at 408, 294 N.E. 2d at 666-667.

Thus, it can be seen that *Abate, Curran* and *Bartlett* provide the basis upon which more recent opinions of this court and countless courts of appeals decisions have relied to determine the purpose behind R.C. 3937.18. Both *Curran* and *Bartlett* added a new element so that the legislative purpose was refined and clarified. For example, *Curran* provided that the purpose of the statute was to protect *persons*, and that the statute be liberally construed to effectuate such purpose. Likewise, *Bartlett* established the notion that the purpose of the statute was to place the injured person in the same position as if the tortfeasor had possessed automobile insurance coverage. However, the common thread among these cases is the concept that uninsured motorist coverage is predicated on the tortfeasor's *lack of liability insurance.*

## B

In the case at bar, the tortfeasor (William Creekmore) negligently injured Randy Webb, one of Creekmore's co-workers. Webb was insured under a contract with State Farm Mutual Automobile Insurance Co. The tortfeasor was insured under a policy with Grange Mutual Casualty Co. After collecting workers' compensation benefits, Webb filed a claim against Grange Mutual, which *denied coverage* based on the tortfeasor's fellow-employee immunity rule found in R.C. 4123.741. At first glance, it would appear that the tortfeasor was not an uninsured motorist because he did in fact have an effective liability insurance policy from Grange Mutual. Thus, there seems to be no "lack of liability insurance" on the part of the tortfeasor. Yet, a simple reading of R.C. 3937.18(D) and the language of the policy rebuts this conclusion. R.C. 3937.18(D) provides in pertinent part:

"For the purpose of this section, a motor vehicle is uninsured if the liability insurer *denies coverage* or is or becomes the subject of insolvency proceedings in any jurisdiction." (Emphasis added.)

The language of the insurance policy in question essentially traces the wording of the statute, and provides as follows:

"*Uninsured Motor Vehicle* — means: 1. a land motor vehicle, the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; but * * * (2) the insuring com-

pany denies coverage or is or becomes insolvent[.]"

Thus, the tortfeasor was in fact an uninsured motorist not only by operation of law, but also by the express language of the insurance policy. As such, the legislative purpose of R.C. 3937.18 is the polestar by which this court should be guided, keeping in mind our prior pronouncements regarding the purpose of uninsured motorist coverage, specifically, that R.C. 3937.18 requires the offering of uninsured motorist coverage for the protection of *injured persons, Abate, supra*; that the statute is to be liberally construed to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists, *Curran, supra*; and the injured policyholder is to be placed in the same position he would have been in if the tortfeasor had possessed liability insurance, *Bartlett, supra*. These principles are not to be discarded so as to achieve a certain result, but instead represent the well-established judicial interpretations of this court.

Of particular importance to this case is our decision in *Bartlett*. Therein, this court stated at the syllabus:

"As of September 15, 1965, R.C. 3937.18 established that all persons contracting for uninsured motorist protection are entitled to recover from their insurer, within the applicable limits of the contract of insurance, all damages which they would have been otherwise entitled to recover from an uninsured motorist, and insurance contract provisions entered into on or after that date which purport to reduce the amount of such recovery are unenforceable as against public policy."

The *Bartlett* court was confronted with a provision in an insurance contract that attempted to reduce the insured's recovery under his uninsured

motorist coverage by the amount of workers' compensation he had received. As can be seen above, the court held this setoff violated R.C. 3937.18 and the public policy of this state. Thus, the court recognized that the contractual right to recover under an uninsured motorist provision is unaffected by the recovery of workers' compensation benefits. Stated otherwise, the court believed that collecting workers' compensation benefits did not "place the injured policyholder in the same position, with regard to recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." *Id.* at 52, 62 O.O. 2d at 408, 294 N.E. 2d at 666. Thus, receiving workers' compensation benefits does not normally place the injured person in the same position as if the tortfeasor had possessed liability insurance.

Additionally, R.C. 3937.18(F) provides: "The coverages required by this section shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury or death." This division of the statute evidences the separate nature of workers' compensation and uninsured motorist coverage, and expressly recognizes that the recovery under one system cannot preclude recovery under the other.

II

The determination that the tortfeasor is an uninsured motorist, however, does not end this inquiry. The question left unanswered is whether Webb is "legally entitled to recover" within the language of R.C. 3937.18(A) and the wording of his policy with State Farm.

A

R.C. 3937.18(A) provides in pertinent part:

"No automobile liability or motor vehicle liability policy * * * shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder *who are legally entitled to recover damages* from the owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom * * *." (Emphasis added.)

The wording of the policy in question tracks the language of the statute in that both contain the now uniform predicate to uninsured motorist coverage that the claimant be "legally entitled to recover" damages from the owner or operator of an uninsured vehicle. Thus, by interpreting this phrase as it is contained in the policy, of necessity we also interpret the language of the statute. More importantly, however, it should be noted that neither the statute nor the policy specifies what the phrase "legally entitled to recover" means. A review of case law from Ohio and other jurisdictions reveals that this phrase has been the subject of extensive judicial interpretation. Not surprisingly, the phrase has been construed in two distinct ways. Indeed, decisions from this court provide a classic example of this dichotomy.

For example, in *York* v. *State Farm Fire & Cas. Co.* (1980), 64 Ohio St. 2d 199, 18 O.O. 3d 412, 414 N.E. 2d 423, this court held that "legally entitled to recover" requires that the in-jured person actually be able to recover against the tortfeasor. The court concluded that because the injured party could not recover from the tortfeasor because of a tort immunity, that party did not meet the predicate for coverage — that she be legally entitled to recover.

Yet, in *Sumwalt* v. *Allstate Ins. Co.* (1984), 12 Ohio St. 3d 294, 12 OBR 368, 466 N.E. 2d 544, it is stated at the syllabus:

"The phrase '*legally entitled to recover* from the owner or operator of an uninsured auto,' contained in the uninsured motorist provision of an automobile liability insurance policy, *means that the insured must be able to prove the elements of her claim necessary to recover damages*. That the uninsured motorist tortfeasor has a child-parent immunity as a defense in an action brought against him by his parents does not affect the insured's elements of the claim for damages nor the insured's right to recover uninsured benefits from her insurer." (Emphasis added.)

In *Sumwalt*, this court distinguished the prior holding in *York* by reasoning that the immunity in *York* was statutory in nature. By implication, the *Sumwalt* court created a distinction between immunity arising from a statute and immunity based on the common law. Such artificial distinctions lack a proper foundation. As noted earlier, immunity operates in the same manner regardless of how it is created.

A review of case law from other jurisdictions reveals further examples of the split of authority as to the meaning of "legally entitled to recover." In general, courts interpret the phrase in one of two ways. One set of cases can be seen as following the *Sumwalt* fault approach, and requires only that the injured person demonstrate that the tortfeasor was at fault using ordinary

negligence principles. See *Barfield* v. *Barfield* (Okla. 1987), 742 P. 2d 1107; *State Farm Auto. Ins. Co.* v. *Baldwin* (Ala. 1985), 470 So. 2d 1230, 1233; *Murphy* v. *United States Fid. & Guar. Co.* (1983), 120 Ill. App. 3d 282, 75 Ill. Dec. 886, 458 N.E. 2d 54; *Uptegraft* v. *Home Ins. Co.* (Okla. 1983), 662 P. 2d 681; *Allstate* v. *Elkins* (1979), 77 Ill. 2d 384, 33 Ill. Dec. 139, 396 N.E. 2d 528. However, the majority of cases that have addressed this issue holds that the exclusivity of workers' compensation precludes uninsured motorist coverage because the injured insured is not legally entitled to recover from the tortfeasor. See *Kough* v. *N.J. Auto. Full Ins. Underwriting Assn.* (1990), 237 N.J. Super. 460, 568 A. 2d 127; *Aetna Cas. & Sur. Co.* v. *Dodson* (1989), 235 Va. 346, 367 S.E. 2d 505; *Perkins* v. *Insurance Co. of North America* (C.A. 5, 1986), 799 F. 2d 955, and cases cited therein. It is significant that the preferred rationale for this line of reasoning is the intent of the legislature in enacting compulsory uninsured motorist coverage. See *Kough, supra,* at 467, 568 A. 2d at 131.[5]

As shown by the foregoing, the meaning of "legally entitled to recover" is susceptible to more than one interpretation. On this basis, the phrase is ambiguous because reasonable minds can reach different conclusions as to its true meaning. At least one court has expressly stated that "the phrase 'legally entitled to recover as damages' is ambiguous and therefore must be construed in a manner most favorable to the insured." *Boyle* v. *State Farm Mut. Auto. Ins. Co.* (1983), 310 Pa. Super. 10, 21, 456 A. 2d 156, 162. The result of this ambiguity requires this writer to once again look to the legislative intent of the General Assembly in enacting R.C. 3937.18.

**B**

Thus, I come to the central issue presented in this case, *i.e.,* a determination of the legislative intent in utilizing the language "legally entitled

---

[5] "Two rationales are generally relied on in cases holding in favor of the insurer. * * * The second and better rationale emphasizes the intention of the Legislature since most of the jurisdictions that have addressed the issue mandate UM coverage by statute." *Kough, supra,* at 466-467. Moreover, in *Perkins, supra,* the Fifth Circuit Court of Appeals relied heavily on the legislative intent of the Mississippi Legislature in enacting mandatory uninsured motorist coverage. In so doing, the court stated as follows:

"*An explicit set off provision* in an uninsured motorist * * * statute expressly directed to worker's compensation benefits *indicates a legislative intention that * * * uninsured motorist recovery not be excluded by the availability of worker's compensation benefits except only to the extent necessary to avoid a double recovery. We have no comparable legislative guidance before us,* and we believe that Mississippi would follow what is apparently the majority rule among states that have considered this question and whose uninsured motorist statutes do not contain a set off clause directed to worker's compensation benefits."

The *Perkins* court indicated that its conclusion may have been different had it been confronted with a statutory scheme that defined the interaction between workers' compensation benefits and uninsured motorist coverage. In Ohio, the General Assembly has expressly provided the necessary "legislative guidance" referred to in *Perkins* in the form of R.C. 3937.18(F). Thus, the holding in *Perkins* and the cases that follow its reasoning can be quickly distinguished from the present case because the legislative scheme involved in those cases is noticeably different from Ohio's.

to recover" in R.C. 3937.18. For the reasons which follow, I believe the intent of the General Assembly is more in line with the reasoning employed in *Sumwalt* and the line of cases following its rationale.

Initially, it should be noted that the reasoning in *York, supra,* is now controverted by the express language of R.C. 3937.18. Consider the following passage from *York*:

"It is obvious from a reading of the statute that the insured must be an entity capable of collecting *from* an uninsured. The city, in the instant case, is cloaked with immunity, and, therefore, the appellees [insureds] are *not legally* entitled to recover damages *from* the city.

"It is the legal defense, and not the status of insurance, that warrants our decision herein. The uninsured motorist coverage is to apply only in those situations in which the *'lack of liability insurance'* is the reason the claim goes uncompensated, and not when the claim goes uncompensated because of the *lack of liability* due to the substantive laws of Ohio." (Emphasis *sic*.) *Id.* at 202, 18 O.O. 3d at 414, 414 N.E. 2d at 425.

As noted earlier, there *is in fact a lack of liability insurance* in this case *because the tortfeasor's insurance carrier denied coverage.* See R.C. 3937.18(D). Therefore, the General Assembly has expressly provided for a scenario where uninsured motorist coverage is applicable, even though the tortfeasor possesses liability insurance. Hence, *York's* pronouncement that uninsured motorist coverage applies *only* where there is a lack of liability insurance is not accurate. Under R.C. 3937.18(D), whenever a tortfeasor's insurance carrier denies coverage, the tortfeasor becomes an uninsured motorist. Moreover, that division of the statute does not refer to the *reason* the tortfeasor's carrier denies coverage. Thus, the reason for denying coverage is immaterial to the issue of whether the tortfeasor is uninsured. Since the policy parallels the statutory language, this court should not read into the policy between these parties a limitation that is not provided therein. To do so would improperly restrict their right to freely contract.

The majority holds that an insured should not have greater rights against his insurer than he has against the tortfeasor. Stated otherwise, the majority rules that the insurer steps into the shoes of the tortfeasor and may assert the defenses of the tortfeasor. However, this approach ignores the very nature of the issues raised. The focus should not be placed on the relationship between the tortfeasor and the insurer, *but rather on the contractual relationship between the insured and the insurer.* The holding in *Barfield, supra,* is instructive on this point. Therein, the court stated as follows:

"Employer-Employee *tort* immunity under the Workers' Compensation Act does not preclude recovery under one's own contract of insurance with an insurance carrier unrelated to the employer-employee relationship. * * *

"Protection under an uninsured motorist policy is a contractual right resting in the insured and thus may be co-existent with the protection under Workers' Compensation Act. * * * An uninsured motorist carrier does not stand in the tortfeasor's shoes * * * [.] * * * Recovery under an uninsured motorist provision derives from the contractual promise of the insurer to the insured to provide coverage in the event of bodily injury, sickness or disease, including death, resulting

from the fault of an uninsured/underinsured motorist. * * *

"* * * The application of principles of contract resolves that insureds are entitled to benefit from policies for which premiums have been paid. * * * The insured has paid the insurer a premium for uninsured/underinsured motorist protection. It would be manifestly unjust to permit the insurer to avoid its contractual duty * * * by its assertion of entitlement to third party tort immunity * * *." (Emphasis *sic.*) *Id.* at 1111-1113.

Thus, the *Barfield* court emphasized the contractual nature of uninsured motorist coverage, and utilized a fault analysis similar to the one that this court used in *Sumwalt:* " 'The words "legally entitled to recover" simply mean that the insured must be able to establish *fault* on the part of the uninsured motorist which gives rise to

damages and prove the extent of those damages.' " (Emphasis *sic.*) (Citation and footnote omitted.) *Barfield, supra,* at 1112.[6]

## Conclusion

The public policy of this state is properly determined by the General Assembly. As demonstrated above, the phrase "legally entitled to recover" is subject to two distinct interpretations. Decisions of this court and the present split of opinion in this case exemplify this ambiguity. Therefore, I urge the General Assembly to review these issues involving uninsured/underinsured motorist coverage as mandated by R.C. 3937.18. The issues decided by the court today are serious in nature, and should be decided by the governing body vested with the responsibility of determining the public policy of this state.

---

[6] I have identified some of the important considerations that flow from the issues presented to this court. There are other equally important concerns that require brief comment. As one legal scholar has noted, "[t]here are several reasons why the existence of tort immunity or other limitation on the insured's rights against the tortfeasor should not preclude claims under uninsured motorist coverage on the ground that the insured would not be legally entitled to recover from the tortfeasor. First, as Dean Prosser observed, '[s]uch immunity does not mean that conduct which would amount to a tort on the part of other defendants is not still equally tortious in character, but merely that for protection of the particular defendant, or of interests which he represents, he is given absolution from liability.' In other words, the immunity absolves only the defendant from liability. The insurance coverage has no relation to the tortfeasor, and, therefore, the tort immunity should have no effect on whether the insurance company indemnifies the insured.

"Second, it is inappropriate to resolve this issue as a problem in semantics: that is, in terms of whether the claimant is 'legally entitled.' It is preferable to decide whether there is a persuasive reason why the existence of an immunity from tort liability for the uninsured motorist should mean that the insurer will not be liable under the uninsured motorist policy. The problem should be resolved by balancing the public policy interests. The uninsured motorist insurance statutes, which require the coverage either to be offered with or included in all motor vehicle or automobile liability insurance policies, reflect a strong public policy in favor of providing indemnification for persons who are injured by uninsured motorists. Whether the tortfeasor is immune from litigation, therefore, is usually a matter of little or no significance in regard to the obligation of the insurer to provide indemnification to the injured person. The important fact is that no compensation is available from the tortfeasor." Widiss, Uninsured Motorist Coverage: Observations on Litigating over When a Claimant Is "Legally Entitled to Recover" (1983), 68 Iowa L. Rev. 397, 426-427.

SWEENEY, J., dissenting. For the reasons expressed in my dissenting opinion in *Nobles* v. *Wolf* (1990), 54 Ohio St. 3d 75, 562 N.E. 2d 144, I concur in the thoughtful analyses provided by Justices Douglas and Resnick in the case *sub judice.*

DOUGLAS, J., dissenting. In its zeal to overrule *Thiel* v. *Allstate Ins. Co.* (1986), 23 Ohio St. 3d 108, 23 OBR 267, 491 N.E. 2d 1121, the majority of this court misses the mark on several important points.

I

First, the majority completely ignores the doctrine of *stare decisis*. For a discussion of previous pronouncements on the doctrine, see *Rocky River* v. *State Emp. Relations Bd.* (1988), 39 Ohio St. 3d 196, 221-222, 530 N.E. 2d 1, 22-23 (Douglas, J., dissenting). See, also, *Rocky River* v. *State Emp. Relations Bd.* (1989), 41 Ohio St. 3d 602, 608, 535 N.E. 2d 657, 662 (Holmes, J., dissenting); and *Rocky River* v. *State Emp. Relations Bd.* (1989), 43 Ohio St. 3d 1, 42-43, 539 N.E. 2d 103, 137-138 (Wright, J., dissenting).

II

Next, the majority reaches its unfair result on the following facts, and by ignoring the following law.

Creekmore has purchased automobile liability insurance to protect him for his negligence in injuring another during the course of operating a motor vehicle. Creekmore has paid his premiums for the insurance. Creekmore, while operating a motor vehicle, accidentally strikes and injures Webb. Webb also has obtained, and paid premiums for, motor vehicle liability insurance which includes, for his protection, uninsured/underinsured motorist coverage. Thus, we have a tortfeasor with liability coverage, an injured victim with uninsured coverage — and yet, by the majority's holding, no coverage at all.

The majority reaches this conclusion on the basis that Creekmore is a fellow employee of Webb and, accordingly, Creekmore has immunity which flows to his liability carrier and flows even further to Webb's carrier which, purportedly, insures against loss by an uninsured motorist. The theory used to deny coverage of Webb from his own carrier is that it is a legal fiction that Creekmore is uninsured because, in fact, Creekmore does have liability insurance.

In reaching its conclusion, the majority conveniently ignores R.C. 3937.18(D). That section, in pertinent part, states: "For the purpose of this section, a motor vehicle is uninsured *if the liability insurer denies coverage * * *.*" (Emphasis added.) There is no question that Creekmore's carrier has "denie[d] coverage." That, by statutory definition, makes Creekmore's automobile an uninsured motor vehicle. Therefore, Webb has a contractual right to seek coverage from his own carrier pursuant to the contract's uninsured motorist provision.

Further, there is good reason for the General Assembly to have included subsection (D) in R.C. 3937.18. Under the holding of today's majority, take the following example. A's car is stolen by B from in front of A's home. A has liability insurance. B crashes into C causing C serious physical injury. B, of course, is uncollectible and C seeks to recover damages against A and A's insurance carrier. A's carrier denies coverage because A's car was being operated without authorization. C then turns to her own carrier pursuant to the uninsured motorist provision of her policy. C's carrier denies coverage because A did have insurance and, thus, cannot be considered to be uninsured. Thus, following today's majori-

ty decision, C recovers nothing despite the fact that, as in the case at bar, there are two paid-for insurance policies purchased for the purpose of providing compensation for injuries and damages suffered by innocent persons.

However, it will be argued, Webb receives workers' compensation. Such compensation does not, of course, cover all of Webb's lost wages, his pain and suffering, and/or his property damage. Likewise, in the example given, C receives nothing at all because the injury did not occur during the course of any employment.

### III

The majority also concludes that *Thiel* should be overruled because the applicable immunity in the case at bar would deprive appellant of its subrogation rights. The right of subrogation is often a right without substance as in a case where the tortfeasor is insolvent and has no insurance. Coverage under a policy of insurance should not be conditioned upon the insurer being able to recover any amount paid on a claim. If this was the case, there would be no need for insurance. The purpose of R.C. 3937.18(A)(1) is to provide coverage to an injured insured party who is unable to obtain compensation from one whose tortious operation of his or her motor vehicle proximately caused such injuries. This is so notwithstanding an insurer's rights of subrogation.

### IV

Finally, it appears that the majority has overlooked the fact that R.C. 3937.18(A)(1) requires that uninsured coverage must be contained in a policy of insurance "* * * for the protection of the persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles* * * *." (Emphasis added.) For purposes of Webb's claim against his own insurer on the uninsured coverage of his policy, the status of Creekmore as a fellow employee is immaterial. While Creekmore is insured, Creekmore's *motor vehicle* is uninsured as a result of the immunity.

### V

I grow weary in the fight to protect the right of insureds to receive, from insurers, compensation and indemnity for legitimate claims for which premiums have been paid. I find it strange that, in the case now before us, there are two insurance policies, uninsured motorist coverage, two individuals who have paid their premiums, but no insurance. A curious result, indeed!

SWEENEY, J., concurs in the foregoing dissenting opinion.