SAFE AUTO INSURANCE COMPANY, Appellee,

v.

CORSON et al., Appellants.

[Cite as *Safe Auto Ins. Co. v. Corson,* 155 Ohio App.3d 736, 2004-Ohio-249.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–030276, C–030311.

Decided Jan. 23, 2004.

Rothchild Law Offices and Eugene M. Rothchild, for appellant Jamie L. Corson.

City Solicitor's Office, J. Rita McNeil, City Solicitor, Gloria Sigman and Terrance A. Nestor, Assistant City Solicitors, for appellant city of Cincinnati.

Freund, Freeze & Arnold and Thomas B. Bruns, for appellee.

---

MARK P. PAINTER, Judge.

{¶ 1} This is a simple auto-accident case overdressed as a legal puzzle. It's not. Uninsured-motorist law has had its share of twists and turns. The city of Cincinnati asks us to shape it into a pretzel. We decline.

{¶ 2} Plaintiffs-appellants Jamie L. Corson and the city of Cincinnati appeal from the entry of summary judgment for defendant-appellee Safe Auto Insurance Company. We affirm.

## I. A Simple Accident Becomes a Legal Conundrum

{¶ 3} Jamie Corson was involved in an accident with a city police vehicle in May 2001. Everyone agrees that the accident was caused by the officer's negligence in merging with traffic. Though not on an emergency call, the officer was acting in the scope of her employment at the time of the accident, so the city of Cincinnati is liable for the damages.[1] The city should have paid Corson's damages, and that would have been that. But no. The city refused to pay and pointed a finger at Safe Auto, Corson's insurance company.

{¶ 4} Safe Auto, probably surprised at being involved at all, did not send Corson a check. Not satisfied that it should pay, it sued both Corson and the city in a declaratory-judgment action, seeking to have the court tell the city to pay up and to stop bothering Safe Auto. A day later, Corson sued Safe Auto—but not the city—for payment of her claim. Later, in her answer to Safe Auto's lawsuit, Corson finally included a claim against the city. Now that three parties to a two-party accident were in court, the trial court consolidated the cases.

## II. To Be or Not To Be Responsible

{¶ 5} Corson owned an insurance policy with Safe Auto. The policy included uninsured-motorist and underinsured-motorist ("UM/UIM") coverage. Responsible people buy UM/UIM coverage to protect themselves against irresponsible drivers who do not have any insurance or enough insurance. The city, claiming

---

1. R.C. 2744.02(B)(1).

to be "uninsured," seeks to be held irresponsible and claims that Corson's insurance policy should pay for the damage the city caused.

{¶ 6} The city, just like every other entity, is liable for damages when its employees negligently injure someone else.[2] There is an exception if a police officer is on an emergency call, and then the city is immune.[3] That was not the case here—the officer was simply driving in traffic like everyone else. The law does exempt the city *employee* from individual liability,[4] on the very reasonable grounds that the employer—the city—must and will pay damages. In other words, the individual officer should not be sued, only the city.

{¶ 7} But the city did not buy insurance to cover these damages. Nor did it comply with the rules to be a "self-insurer" under the UM/UIM statutes.[5] It simply chose to pay damages or judgments out of the city coffers, which is perfectly proper.

{¶ 8} The city somehow concocted the theory that someone else should pay. That someone else was Safe Auto. This was evidently because Safe Auto was the only insurance company involved. But why should Safe Auto—the insurance company for the *innocent* driver—pay damages the city of Cincinnati owes?

{¶ 9} Safe Auto, perhaps as confused as is this court as to why it was even in this case, made many arguments. The one that the trial court bought was that the city was self-insured in practical fact. There is certainly case law to support that theory.[6] If the city was self-insured under the UM/UIM law, then even it admits that it had to pay the damages, and it could not claim to be uninsured. We do not disagree with this analysis, but we do not see why it is necessary.

{¶ 10} The city's argument—that it was "uninsured"—might be clever, but how that fact released it from liability for damages escapes us. If an uninsured millionaire had hit Corson, could the millionaire have simply said, "I'm uninsured so I don't have to pay—your own insurance has to pay for my negligence," and blithely continued down the road unsued?

---

2. R.C. 2744.02(B)(1).

3. R.C. 2744.02(B)(1)(a).

4. R.C. 2744.03(A)(6).

5. See R.C. 4509.72.

6. See *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310; *Matthews v. Regional Transit Auth.* (Nov. 7, 1985), 8th Dist. No. 49406, 1985 WL 8409.

{¶ 11} Now if that same millionaire had followed the statutory requirements to certify himself as a self-insurer,[7] he would no doubt have been liable for his actions. And the insurance company would not.

{¶ 12} But the city of Cincinnati was not required to follow the self-insurance certification methods prescribed by the financial responsibility law.[8] Because it was presumed to be responsible, it did not have to file papers with the state guaranteeing that it was able to pay damages. The city was allowed pay out of city coffers. Somehow, the city interpreted this to mean that it was uninsured, unself-insured, and unliable. The city's argument is that, by not complying with a law it does not have to comply with, it can escape paying what it owes.

### III. Summary Judgment

{¶ 13} We review a grant of summary judgment de novo.[9] Summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[10] A court shall grant summary judgment where reasonable minds can come only to a conclusion adverse to the nonmoving party.[11]

{¶ 14} There are no factual disputes in this case. The city admitted that the officer's negligence had caused the accident and that the officer was acting in the scope of her employment at that time. It also admitted that it owned the police vehicle involved in the accident and that the vehicle was registered in Ohio. The only question that remains is whether Safe Auto was entitled to judgment as a matter of law. And of course it was.

### IV. Safe Auto's Policy Did Not Apply

{¶ 15} Because the city was liable in the first instance, there was no need to resort to the Safe Auto policy at all. All the rest of the discussion in the city's brief is perhaps interesting, but mainly irrelevant. As Tweedledee said to Tweedledum, "If it was so, it might be; and if it were so, it would be; but as it isn't, it ain't. That's logic." [12]

---

7. See R.C. 4509.45 and 4509.72.

8. R.C. 4509.71.

9. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

10. Civ.R. 56(C).

11. Id.

12. Carroll, Through the Looking Glass (Easton Press Ed.1965) 65.

{¶ 16} But because Corson and the city make a fuss about whether the policy applied, we address their concerns.

{¶ 17} The Safe Auto UM/UIM coverage did not apply to any vehicle "owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law, or similar law." Therefore, if the city was self-insured, Safe Auto was not liable under the policy.

{¶ 18} The relevant UM/UIM provision in effect at the time of the insurance contract between Corson and Safe Auto was R.C. 3937.18(K), as amended by Senate Bill 267. That provision stated that the terms "uninsured" and "underinsured" did not apply where the motor vehicle was owned by a political subdivision, the operator was subject to immunity, and the action was brought against the *operator*.[13] It gave no such protection to political subdivisions—here, the operator was not sued. The law also excluded vehicles that were self-insured within the meaning of the financial responsibility law.[14]

{¶ 19} The city admitted that it owned the vehicle involved in the accident. The immunity question is all that remains. The city and Corson claim that the officer had immunity here. Again, correct but irrelevant.[15] But the code gave— and still gives—immunity to a political subdivision *only* when the officer was responding to an emergency call.[16] This was not the case here.

{¶ 20} Under the previous version of R.C. 3937.18(B), the only way Safe Auto would be obligated to cover Corson's damages is if the city had immunity. But the city did not have immunity. The city was liable for the officer's negligence. The city was liable, whether or not it had insurance, because it was not immune unless the officer was on an emergency call.

{¶ 21} Because the city owned the officer's vehicle, and this case did not involve a suit against the operator of the vehicle, the Safe Auto policy simply did not apply, and did not need to apply, and summary judgment was appropriate.

## V.  Self-Insured

{¶ 22} But even if immunity did apply—which it clearly did not—the city was still a self-insurer in the practical sense, as the trial court held.

---

13.  R.C. 3937.18(K)(2), as amended by S.B. No. 267.

14.  R.C. 3937.18(K)(3), as amended by S.B. No. 267.

15.  R.C. 2744.03(A)(6).

16.  R.C. 2744.02(B)(1)(a).

■■ {¶ 23} Self-insurance is the retention of the risk of loss by the one bearing the original risk under the law or contract.[17]  An entity may be self-insured in a practical sense for the purposes of UM/UIM law.[18]

{¶ 24} Corson now argues that the city was not required to purchase insurance. She is correct.  A political subdivision may use public funds to contract for insurance to cover its and its officers' potential liability.[19]  It may also establish and maintain a self-insurance program.[20]  But the city admitted that it paid all judgments and settlements arising out of the negligence of its police officers from its own funds.  This was self-insurance in the practical sense.

{¶ 25} Had the city purchased insurance from an independent company, Safe Auto's UM/UIM coverage would not have applied.  The city wants to avoid purchasing liability insurance but wants also to avoid paying claims out of its own pockets when an insurance policy would arguably cover the damage.  The city cannot have it both ways.

{¶ 26} Because the city owned the officer's vehicle, because this was not an action against the officer, and because the city was self-insured in a practical sense, the officer's vehicle was not uninsured or underinsured for the purposes of UM/UIM law.

### VI.   Another Irrelevancy

{¶ 27} The UM/UIM coverage in the insurance contract excluded any motor vehicles owned by a governmental authority or agency.  The city now argues that this exclusion was against public policy.

{¶ 28} Ohio courts have rejected exclusions of government vehicles from uninsured-motorist coverage as being against public policy.[21]  These cases have voided the exclusion language based on an earlier version of R.C. 3937.18(K) that did not include the same definition of "uninsured motor vehicle" used in this case. But the same logic might apply where a government vehicle was not subject to immunity and was not self-insured.

---

17.  *Physicians Ins. Co. v. Grandview Hosp. & Med. Ctr.* (1988), 44 Ohio App.3d 157, 542 N.E.2d 706.

18.  *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310.

19.  R.C. 9.83.

20.  Id.

21.  See *Watters v. Dairyland Ins. Co.* (1976), 50 Ohio App.2d 106, 4 O.O.3d 68, 361 N.E.2d 1068; *Jennings v. Dayton* (1996), 114 Ohio App.3d 144, 682 N.E.2d 1070; *Thompson v. Economy Fire & Cas. Co.* (Mar. 6, 1991), 4th Dist. No. 1697, 1991 WL 28331.

{¶ 29} We agree that Safe Auto's policy might pose a problem in certain fact scenarios.  But such a scenario was not involved here, so we need not decide the public-policy issue in this case.

{¶ 30} Summary judgment was appropriate.  We therefore overrule Corson's and the city's assignments of error and affirm the trial court's judgment.

Judgment affirmed.

WINKLER, P.J., and GORMAN, J., concur.