OPINION
{¶ 1} This is a dispute over who is primarily liable for injuries incurred by Western Rogers as a result of a motor vehicle collision caused by the negligence of an employee of the City of Dayton. State Farm Mutual Automobile Insurance Company, the underwriter of a policy of *Page 2 
uninsured/underinsured motorist insurance issued to Rogers, contends that because the City of Dayton is self-insured, in a "practical sense," its liability is excluded from the scope of the uninsured/underinsured motorist coverage. This would leave the City of Dayton responsible for damages. The City of Dayton contends that it is not self-insured, so that its liability is not excluded from the scope of the uninsured/underinsured motorist coverage, with the result that State Farm is responsible, and subrogation is not permitted against a municipality.
 {¶ 2} The City of Dayton obtained summary judgment in its favor, from which State Farm appeals. We agree with the trial court that the City of Dayton is not, as a matter of law, self-insured. Therefore, the judgment of the trial court is Affirmed.
 I {¶ 3} In April, 2002, Earl Moreo, III, a traffic signal electrician employed by the City of Dayton, was dispatched to the intersection of Emerson and Salem Avenues in Dayton. After checking the operation of a traffic signal, he began to execute a U-turn and struck an automobile owned and operated by Western Rogers. Rogers had an automobile insurance policy issued by State Farm. The insurance policy provided for uninsured motorist coverage.
 {¶ 4} Rogers brought this action against the City of Dayton and Moreo. Rogers alleges that the City of Dayton and Moreo are liable for his injuries, and that State Farm is also monetarily responsible to pay for his injuries within the limits of his uninsured/underinsured motorist ("UM/UIM") policy provisions. All four of the parties filed motions for summary judgment. State Farm moved for summary judgment on the ground that Rogers was not entitled to uninsured motorist benefits under his State Farm policy, because the City of Dayton is a self-insured entity, not an *Page 3 
uninsured entity. Moreo and the City moved for partial summary judgment on the grounds that they are immune from liability, the City is uninsured for purposes of determining Rogers's entitlement to UM/UIM benefits under R.C. 3937.18, and they are entitled to an offset for any UM/UIM benefits Rogers was entitled to receive from State Farm.
 {¶ 5} The trial court granted Rogers's motions for summary judgment, holding that State Farm would be held financially responsible to the limits of its uninsured motorist coverage if the City of Dayton and/or Moreo were found legally responsible for Rogers's injuries. The trial court granted Moreo's motion for summary judgment, holding that Moreo is immune from liability under Chapter 2744 of the Revised Code. The trial court granted the City of Dayton's motion for summary judgment, holding that the City is "uninsured" for purposes of the uninsured motorist policy. The trial court denied State Farm's motion for summary judgment.
 {¶ 6} State Farm moved for reconsideration of the trial court decision relating to the motions for summary judgment. The trial court denied State Farm's motion for reconsideration. Thereafter, the trial court entered an order finding no just reason for delay. State Farm appeals from the summary judgment rendered against it.
 II {¶ 7} State Farm asserts four assignments of error, as follows:
 {¶ 8} "THE TRIAL COURT ERRED IN DENYING APPELLANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND GRANTING APPELLEE CITY OF DAYTON'S MOTION FOR SUMMARY JUDGMENT. *Page 4 
 {¶ 9} "THE TRIAL COURT ERRED IN HOLDING THAT THE CITY OF DAYTON WAS NOT A SELF-INSURED ENTITY UNDER OHIO LAW, AND, CONSEQUENTLY, THAT THE PLAINTIFF WAS ENTITLED TO UM/UIM COVERAGE UNDER HIS STATE FARM POLICY OF INSURANCE.
 {¶ 10} "THE TRIAL COURT ERRED BY CONSIDERING ONLY WHETHER THE CITY OF DAYTON WAS SELF-INSURED UNDER THE OHIO FINANCIAL RESPONSIBILITY ACT AND NOT CONSIDERING WHETHER THE CITY WAS SELF-INSURED UNDER OTHER OHIO STATUTES AND OHIO COMMON LAW GOVERNING FINANCIAL RESPONSIBILITY.
 {¶ 11} "THE TRIAL COURT ERRED IN HOLDING THAT THE CITY OF DAYTON IS NOT SELF-INSURED UNDER THE LANGUAGE OF THE STATE FARM POLICY."
 {¶ 12} We will address State Farm's four assignments of error together because they all turn upon whether the City of Dayton is self-insured for purposes of the insurance policy and R.C. 3937.18. "Appellate review of a decision by a trial court granting summary judgment is de novo."Cox v. Kettering Medical Center, Montgomery App. No. 20614,2005-Ohio-5003, _35.
 {¶ 13} This appeal relates to an action commenced by a plaintiff, Rogers, seeking to recover damages flowing from an automobile accident allegedly caused by the negligence of an employee of the City of Dayton, Moreo. "[Political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." R.C. 2744.02(B) (1 ). It is undisputed that Moreo was engaged within the scope of his employment and authority. Pursuant to R.C. 2744.03(A), an employee of the *Page 5 
City of Dayton has immunity from liability in a civil action brought to recover damages for injury to persons allegedly caused by any act or omission in connection with a governmental function. Therefore, Moreo arguably is immune from liability to Rogers. Unlike its employee, however, the City of Dayton does not have immunity from Rogers's action. See R.C. 2744.02(B) (1 ), 2744.03(A). Thus, the question becomes who should pay for damages resulting from Moreo's alleged negligence arising in the course of his employment with the City.
 {¶ 14} State Farm makes the straightforward argument that the City should pay the damages, because the alleged negligence of the City's employee caused Rogers's injuries, the City has not articulated any basis on which the City should be granted immunity, and the City has not shown that it is unable to pay damages to Rogers. This approach was eloquently endorsed by Judge Painter in Safe Auto Ins. Co. v.Corson, 155 Ohio App.3d 736, 2004-Ohio-249, _5-13: "Corson owned an insurance policy with Safe Auto. The policy included uninsured-motorist and underinsured-motorist ('UM/UIM') coverage. Responsible people buy UM/UIM coverage to protect themselves against irresponsible drivers who do not have any insurance or enough insurance. . . . But the city did not buy insurance to cover these damages. Neither did it comply with the rules to be a `self-insurer' under the UM/UIM statutes. It simply chose to pay damages or judgments out of the city coffers, which is perfectly proper. The city somehow concocted the theory that someone else should pay. That someone else was Safe Auto. This was evidently because Safe Auto was the only insurance company involved. But why should Sate Auto-the insurance company for the innocent driver-pay damages the city of Cincinnati owes? . . . [T]he city of Cincinnati was not required to follow the self-insurance certification methods *Page 6 
prescribed by the financial responsibility law. Because it was presumed to be responsible, it did not have to file papers with the state guaranteeing that it was able to pay damages. The city was allowed to pay out of city coffers. Somehow, the city interpreted this to mean that it was uninsured, unself-insured, and unliable. The city's argument is that, by not complying with a law it does not have to comply with, it can escape paying what it owes."
 {¶ 15} In our view, the General Assembly has clearly commanded a different result. R.C. 4509.72(A) provides as follows:
 {¶ 16} "Any person in whose name more than twenty-five motor vehicles are registered in this state may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the registrar of motor vehicles as provided in division (B) of this section."
 {¶ 17} Because the City of Dayton owns more than 25 motor vehicles, it could obtain a certificate of self-insurance, and thereby qualify as a self-insurer under Ohio Revised Code Chapter 4509, entitled "Financial Responsibility." It did not do so.
 {¶ 18} At the relevant time, which the parties recognize is the most recent renewal of State Farm's UM/UIM policy preceding the accident, R.C. 3937.18(K)(3) defined "uninsured motor vehicle" as follows:
 {¶ 19} "(K) As used in this section, `uninsured motor vehicle' and `underinsured motor vehicle' do not include any of the following motor vehicles:
 {¶ 20} "* * *
 {¶ 21} "(3) A motor vehicle self-insured within the meaning of the financial responsibility law of the state in which the motor vehicle is registered."
 {¶ 22} Because the motor vehicle the operation of which caused Rogers's injuries *Page 7 
was not self-insured within the meaning of the financial responsibility law of Ohio, R.C. Chapter 4509, it was not excluded from the definition of an uninsured motor vehicle, within the plain meaning of R.C. 3937.18(K)(3). Consequently, as the trial court held, Rogers's injury was within the scope of State Farm's uninsured motor vehicle coverage.
 {¶ 23} R.C. 2744.05(B) provides as follows:
 {¶ 24} "If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the Court, and the amount of benefits shall be deducted from any award against a political subdivision recovered by the claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits."
 {¶ 25} It is the collateral source rule clearly set forth in R.C.2744.05(B) that establishes the result to which Judge Painter took offense in Safe Auto Ins. Co. v. Corson, supra, because it shifts the financial responsibility from a municipality that has employed an immune tortfeasor to the insurance carrier that has provided uninsured motorist coverage to the tort victim, while charging the tort victim a premium for that coverage. Without endorsing the reasoning, we can imagine the Ohio General Assembly having decided, as a matter of policy, that it is preferable to impose the financial harm resulting from a motor vehicle tort upon a commercial insurance carrier, who has received a premium for uninsured motorist coverage, as opposed to either: (1 ) the tort victim; (2) the municipal employee who was acting within the scope of duties for which immunity is provided under R.C. 2744.02; or (3) the municipality that employed the tortfeasor. In short, the General Assembly appears to have adopted a schedule of preference for who should *Page 8 
bear the harm of a tort caused by a municipal employee acting within the scope of his immunity as follows: (1 ) an insurance carrier providing uninsured motorist coverage to the victim, if there is one; (2) the municipality; and (3) the tort victim. The General Assembly has obviously found public policy in favor of immunity for the municipal employee, and has decided that of the three other potential bearers of the loss, the tort victim is the least able to sustain the loss, the municipality is the next least able to sustain the loss, and the insurance carrier is in the best position to sustain the loss. While we might not agree with this schedule of preference, we do not find it to be irrational.
 {¶ 26} State Farm's assignments of error are overruled.
 III {¶ 27} All of State Farm's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., concurs.