ROGERS *v.* CITY OF DAYTON ET AL., APPELLEES; STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., APPELLANT.

[Cite as *Rogers v. Dayton,* 118 Ohio St.3d 299, 2008-Ohio-2336.]

(Nos. 2007–0549 and 2007–0684—Submitted January 8, 2008—Decided May 21, 2008.)

LUNDBERG STRATTON, J.

{¶ 1} This is a dispute between the city of Dayton, appellee, and State Farm Mutual Automobile Insurance Company ("State Farm"), appellant. We must decide which party is primarily liable for the alleged negligence of a city of Dayton employee who, while driving a city vehicle, apparently caused an accident that injured the plaintiff. To answer this question, we must interpret former R.C. 3937.18(K)(3), 148 Ohio Laws, Part V, 11380, 11383–11384, which excluded a motor vehicle "self-insured within the meaning of the financial responsibility law of the state" from being "uninsured" or "underinsured" as those terms were used in R.C. 3937.18.

{¶ 2} We hold that a political subdivision is self-insured for purposes of former R.C. 3937.18(K)(3) if it qualifies as a self-insurer under R.C. Chapter 4509, although it is not required to obtain a certificate of self-insurance.

{¶ 3} On April 22, 2002, Earl Moreo III, a city of Dayton employee, was operating a motor vehicle owned by the city when he struck a vehicle being driven by Western Rogers. Moreo was acting within the course and scope of his employment when the accident occurred.

{¶ 4} Rogers filed this action against Moreo and the city of Dayton to recover for his injuries. He also named his personal insurer, State Farm, as a party defendant for purposes of uninsured/underinsured-motorist ("UM/UIM") coverage.

{¶ 5} The trial court awarded summary judgment to Moreo on the basis of immunity from liability under R.C. 2744.03(A)(6). The court acknowledged that Dayton was liable for the negligence of its employee. However, the trial court concluded that Dayton was uninsured for purposes of Rogers's entitlement to UM/UIM coverage under his personal insurance policy. The city had no insurance policy or certificate of self-insurance under R.C. 4509.72, which covers the requirements for self-insurers, because as a municipality, it is exempt from filing. The court granted summary judgment to the plaintiff, holding that State Farm was responsible up to the limits of Rogers's UM/UIM coverage.

{¶ 6} The Court of Appeals for Montgomery County affirmed. The appellate court relied on the statutory definition in former R.C. 3937.18(K)(3), which *excluded* from the definition of uninsured motor vehicles "[a] motor vehicle self-insured within the meaning of the financial responsibility law of the state in which the motor vehicle is registered." The court concluded that Dayton did not qualify as self-insured under R.C. Chapter 4509 because it did not have a certificate of self-insurance from the registrar of motor vehicles. Therefore, for purposes of UM/UIM coverage under former R.C. 3937.18, the motor vehicle that caused Rogers's injuries was uninsured.

{¶ 7} The court of appeals certified that its judgment in this case is in conflict with the judgment of the First District Court of Appeals in *Safe Auto Ins. Co. v. Corson*, 155 Ohio App.3d 736, 2004–Ohio–249, 803 N.E.2d 863, on the following issue:

{¶ 8} "Under R.C. 3937.18(K)(3)(2000), is a political subdivision self-insured within the meaning of the financial responsibility law of Ohio if the political subdivision has not qualified as a self-insurer under R.C. Chapter 4509?"

{¶ 9} This cause is now before this court upon our determination that a conflict exists (case No. 2007–0684) and pursuant to the allowance of a discretionary appeal (case No. 2007–0549).

{¶ 10} In 2000, R.C. 3937.18(K)[1] provided that the following motor vehicles were *not* considered an "uninsured motor vehicle" or "underinsured motor vehicle" as those terms were used in the uninsured-motorist statute:

{¶ 11} "(1) A motor vehicle that has applicable liability coverage in the policy under which the uninsured and underinsured motorist coverages are provided;

{¶ 12} "(2) A motor vehicle owned by a political subdivision, unless the operator of the motor vehicle has an immunity under Chapter 2744. of the Revised Code that could be raised as a defense in an action brought against the operator by the insured;

{¶ 13} "(3) A motor vehicle self-insured within the meaning of the financial responsibility law of the state in which the motor vehicle is registered."

{¶ 14} If the Dayton vehicle that struck Roger's vehicle is uninsured under former R.C. 3937.18(K), then State Farm is primarily liable to Rogers under his personal insurance policy, which provided UM coverage up to $100,000 for each person. The dispute centers on whether Dayton is self-insured under former R.C. 3937.18(K)(3) and what is meant by "the financial responsibility law of the state."[2]

{¶ 15} The city of Dayton did not purchase insurance policies to cover the vehicles it owned. Instead, Dayton established a self-insurance program to directly pay damages in civil actions, consistent with R.C. 2744.08(A)(2)(a). Pursuant to Dayton Codified Ordinances 36.203 and 36.204, Dayton set aside public funds annually to be used to pay claims and judgments.

{¶ 16} Dayton argues that "the financial responsibility law of the state" refers to R.C. Chapter 4509. This chapter requires persons with vehicles registered in the state to file proof of financial responsibility. R.C. 4509.44 and 4509.45. Any person who has more than 25 motor vehicles registered in the state may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the registrar of motor vehicles after demonstrating the financial ability to pay judgments against him. R.C. 4509.72(A) and (B).

{¶ 17} The provisions of R.C. Chapter 4509, however, do not apply to motor vehicles owned and operated by a political subdivision of the state (with the exception of R.C. 4509.06, which involves filing an accident report). R.C. 4509.71.

1. The law in effect when the parties entered into the policy controls. *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 287, 695 N.E.2d 732. The version of Ohio's uninsured-motorist statute that applies in this case was enacted by Sub.S.B. No. 267, effective September 21, 2000. 148 Ohio Laws, Part V, 11380, 11383–11384.

2. The current version of R.C. 3937.18(B) contains similar language: "An 'uninsured motorist' does not include the owner or operator of a motor vehicle that is self-insured within the meaning of the financial responsibility law of the state in which the motor vehicle is registered."

Therefore, Dayton did not have a certificate of self-insurance from the registrar because it was not legally required to obtain one. Dayton contends that it was not self-insured under the financial-responsibility law of Ohio because it had no certificate of self-insurance. Therefore, its vehicle was uninsured for purposes of former R.C. 3937.18.

{¶ 18} State Farm contends that the "financial responsibility law of the state" is not limited to R.C. Chapter 4509. Other statutes address the financial responsibility of political subdivisions. For example, R.C. 9.83 authorizes political subdivisions to either procure insurance or self-insure for motor-vehicle liability, and R.C. 2744.08(A) authorizes a political subdivision to procure insurance or self-insure to cover claims or judgments arising from "its and its employees' potential liability in damages in civil actions for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function." State Farm argues that because Dayton has a self-insurance program, the city is self-insured "within the meaning of the financial responsibility law" for purposes of R.C. 3937.18(K)(3) and is, therefore, not uninsured.

{¶ 19} According to Dayton, R.C. 9.83 and 2744.08 permit a political subdivision to set aside funds to pay tort claims, but unlike the provisions of R.C. Chapter 4509, they do not require the city to prove financial responsibility. Former R.C. 3937.18(K)(3), however, does not require filing of proof of self-insurance—only that the vehicle be "self-insured within the *meaning* of the financial responsibility law." (Emphasis added.) Dayton meets that threshold.

{¶ 20} There is no dispute that Dayton does not have a certificate of self-insurance because it is exempt from the requirements of R.C. Chapter 4509. Nevertheless, Dayton complied with the financial-responsibility law that applies to political subdivisions by creating a self-insurance program for political-subdivision tort-liability purposes as authorized under former R.C. 2744.08(A). 141 Ohio Laws, Part III, 6083, 6085. Because former R.C. 3937.18(K)(3) does not specifically refer to R.C. Chapter 4509, we hold that Dayton is self-insured "within the meaning of the financial responsibility law of the state," and its vehicle is not uninsured for purposes of R.C. 3937.18(K)(3).

{¶ 21} The First District Court of Appeals reached the same conclusion for different reasons in *Safe Auto Ins. v. Corson,* 155 Ohio App.3d 736, 2004–Ohio–249, 803 N.E.2d 863. In *Corson,* a motorist was injured by a Cincinnati police officer who was driving a city vehicle. The officer was within the scope of his employment but was not on an emergency run at the time. The city admitted that the officer was negligent and that he was driving a vehicle owned by the city and registered in Ohio. The officer had immunity, but the city did not. The city of Cincinnati had not purchased liability insurance but instead paid claims

directly from city funds. The issue in *Corson* was whether the city's vehicle was considered an uninsured vehicle for purposes of R.C. 3937.18. If so, Corson would be entitled to seek UM coverage under his personal-liability insurance policy.

{¶ 22} *Corson* held that Cincinnati was self-insured in the practical sense, so the city's vehicle was not uninsured for purposes of former R.C. 3937.18. The city was liable, and Corson's personal insurance policy ·did not apply. Although *Corson* relied on the city's self-insured status, we note that Cincinnati, like Dayton in this case, also met the statutory requirements for self-insurance that apply to political subdivisions.

{¶ 23} Dayton also contends that requiring a private insurance company to pay is consistent with public policy to shift the financial responsibility for torts committed by political subdivisions from taxpayers to insurance companies, citing *Galanos v. Cleveland* (1994), 70 Ohio St.3d 220, 221, 638 N.E.2d 530. Dayton points to the collateral-source rule in R.C. 2744.05(B), which prohibits insurers from bringing a subrogation claim against a political subdivision. This case, however, does not involve subrogation, and the collateral-source rule is not relevant to our interpretation of former R.C. 3937.18(K)(3).

{¶ 24} Dayton argues that acquiring self-insured status under former R.C. 3937.18(K)(3) would create an internal conflict with former R.C. 3937.18(K)(2), which provides that if "the operator of the motor vehicle [owned by a political subdivision] has an immunity under Chapter 2744. of the Revised Code that could be raised as a defense in an action brought against the operator by the insured," the political subdivision is uninsured. Dayton argues that the vehicle in this accident was owned by the city and operated by its employee, who was granted R.C. Chapter 2744 immunity. Therefore, the city's vehicle was uninsured under former R.C. 3937.18(K)(2), a conclusion in direct conflict with our holding that the city is self-insured under (K)(3).

{¶ 25} The General Assembly amended R.C. 3937.18 in 1997 Am.Sub.H.B. 261, 147 Ohio Laws, Part II, 2372, 2372–2377 ("H.B. 261") to limit the insured's right to recover when the owner or operator of an uninsured motor vehicle has immunity and to define certain vehicles that are not uninsured or underinsured motor vehicles. Previously, legal immunity had prevented an insured from collecting UM/UIM benefits because the insured was not "legally entitled to recover" from the tortfeasor. *State Farm Mut. Auto. Ins. Co. v. Webb* (1990), 54 Ohio St.3d 61, 562 N.E.2d 132, syllabus. In *Webb,* the tortfeasor was immune under the fellow-employee doctrine, a statutory law prohibiting one employee from recovering damages from another in the course of the injured employee's employment. Because the injured insured was not legally entitled to recover from the tortfeasor, his fellow employee, the Supreme Court held that the

injured's insurance company was not required to pay UM benefits under the terms of a policy that said the company would pay for UM/UIM damages that "an insured is *legally entitled to collect.*" (Emphasis added.) Id. at 61, 562 N.E.2d 132.

{¶ 26} And in *Kurent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 581 N.E.2d 533, the insured, who had been injured in a no-fault insurance state that did not recognize a claim against the tortfeasor, likewise could not collect UM benefits because he was not legally entitled to recover from the tortfeasor.

{¶ 27} H.B. 261 amended R.C. 3937.18(A) to provide that when an owner or operator of a motor vehicle is immune under the Political Subdivision Tort Liability Law, R.C. Chapter 2744, the immunity will not affect the ability to recover UM/UIM coverage from one's insurer. In addition, H.B. 261 added section (K), which identified certain vehicles that were not uninsured or underinsured. Former R.C. 3937.18(K)(2) excluded any motor vehicle owned by a political subdivision from being uninsured—because the political subdivision would likely have insurance or the ability to pay damages—unless the operator of the political subdivision's vehicle is immune (and the insured is not legally entitled to recover from the operator), whereas (K)(3) excluded from being uninsured any self-insured vehicle. 148 Ohio Laws, Part V, 11380, 11383–11384.

{¶ 28} A political subdivision is liable for the negligent operation of a motor vehicle by its employees within the scope of their employment except when the employee is on an emergency. R.C. 2744.02(B)(1)(a). By statute, the employee driver is always immune from liability for negligence unless his or her acts were outside the scope of employment. R.C. 2744.03(A)(6)(a). Thus, the General Assembly must have intended the word "operator" in R.C. 3937.18(K)(2) to refer to the city as well as the employee/driver. Because the employee is always immune, there is no need to refer to the immunity of only the employee/driver in section (K)(2). Therefore, applying the immunity language in (K)(2) only to the employee/driver would be redundant because the employee/driver is always immune.

{¶ 29} In addition, because the political subdivision acts only through its employees and Moreo was within the scope of employment at the time of the accident, it is reasonable that Dayton is considered the "operator" of the vehicle for purposes of R.C. 3937.18(K)(2). See *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 664, 710 N.E.2d 1116.

{¶ 30} Consequently, we interpret R.C. 3937.18(K)(2) to apply to emergency vehicles when both the owner and operator/driver are afforded statutory immunity under R.C. Chapter 2744 or in other situations in which both the owner and operator are immune from liability. Because the political subdivision acts only

through its employees, the vehicle owned by the city of Dayton was uninsured under R.C. 3937.18(K)(2). There is no inconsistency between R.C. 3937.18(K)(2) and (K)(3).

{¶ 31} For the foregoing reasons, we answer the certified question in the affirmative. We hold that a political subdivision is self-insured for purposes of former R.C. 3937.18(K)(3) if it qualifies as a self-insurer under R.C. Chapter 4509, although it is not required to obtain a certificate of self-insurance.

{¶ 32} Consequently, we reverse the judgment of the court of appeals and enter judgment in favor of appellant.

Judgment reversed.

PFEIFER, O'CONNOR, and O'DONNELL, JJ., concur.

MOYER, C.J., and LANZINGER and CUPP, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 33} I respectfully dissent, because the majority opinion is in conflict with former R.C. 3937.18(K)(2).

{¶ 34} Former R.C. 3937.18(K)(2) provides that a car is not uninsured or underinsured if it is "[a] motor vehicle owned by a political subdivision, unless the operator of the motor vehicle has an immunity under Chapter 2744. of the Revised Code that could be raised as a defense in an action brought against the operator by the insured." 148 Ohio Laws, Part V, 11380, 11383–11384. In the present case, the car at issue was owned by the city of Dayton and operated by a city employee who was immune from liability under R.C. Chapter 2744. By the express terms of former R.C. 3937.18(K)(2), the car is therefore uninsured or underinsured. The majority holds the exact opposite—that Dayton is self-insured and therefore *not* uninsured or underinsured under former R.C. 3937.18(K)(3).

{¶ 35} The majority reconciles this conflict by incorrectly defining "operator" in former R.C. 3937.18(K)(2) as including "political subdivision." The majority, which argues that the idea of an "immune operator" is internally redundant, bases this argument on an incorrect statement of law: "Because the employee is always immune, there is no need to refer to the immunity of only the employee/driver in section (K)(2)." The majority is incorrect that an employee is always immune. As the majority recognizes, "the employee driver is always immune from liability for negligence *unless his or her acts were outside the scope of employment.*" (Emphasis added.) ¶ 28. The term "immune" therefore serves to distinguish between drivers who were employees acting within the scope of employment and those who were not.

{¶ 36} In the majority's discussion of the meaning of "operator" in former R.C. 3937.18(K)(2), it speculates without support about the intent of the General Assembly, using its theory of the intent of the General Assembly to reach a countertextual result. As a preliminary matter, it is unnecessary here to look beyond the language to determine the intent of the General Assembly: "The court must first look to the plain language of the statute itself to determine the legislative intent. We apply a statute as it is written when its meaning is unambiguous and definite." (Citation omitted.) *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. The plain meaning of "to operate" is "[t]o control the functioning of; run." American Heritage Dictionary of the English Language, Third Edition (1992) 1268. The word "operator" is not a synonym for "owner." The existence of distinct meanings for these words is also evident in the statutory context. Former R.C. 3937.18(K)(2) refers both to the owner and the operator of the vehicle: "A motor vehicle *owned* by a political subdivision, unless the *operator* of the motor vehicle has an immunity." (Emphasis added.) By using two different terms, the text implies two distinct meanings.

{¶ 37} The majority provides no support for its theory of the General Assembly's intent in enacting the provisions: "Former R.C. 3937.18(K)(2) excluded any motor vehicle owned by a political subdivision from being uninsured—*because the political subdivision would likely have insurance or the ability to pay damages*—unless the operator of the political subdivision's vehicle is immune (*and the insured is not legally entitled to recover from the operator*), whereas (K)(3) excluded from being uninsured any self-insured vehicle." (Emphasis added.) Majority opinion, ¶ 27. The majority suggests that the General Assembly intended to shift the burden of satisfying the judgment to political subdivisions, to the extent that insurance companies must satisfy the judgment only in cases in which it is impossible to subject the political subdivision to liability. The majority provides no support for this theory.

{¶ 38} The majority's statement of the intent of the General Assembly also ignores the considerable evidence to the contrary provided by the collateral-source rule. As the majority recognizes, the collateral-source rule, recorded in R.C. 2744.05(B), prohibits insurers from bringing a subrogation claim against a political subdivision. The subrogation rule thus recognizes the very result that the majority appears to think is impossible: The burden of satisfying the judgment shifts to the insurance company when the political subdivision can still be subjected to liability. The majority dismisses the collateral-source rule as irrelevant on the ground that this case does not involve subrogation, but I believe the rule provides strong and very relevant evidence that the General Assembly did not intend to shift the burden to satisfy the judgment to political subdivisions in all cases in which political subdivisions can still be subjected to liability.

{¶ 39} I also believe that the majority improperly relies on R.C. 2744.08(A)(2)(a) to hold that Dayton is self-insured within the meaning of the financial-responsibility law of the state. That provision provides only minimal guidance for the establishment of a self-insurance program by a political subdivision: "[A] political subdivision may establish and maintain a self-insurance program relative to its and its employees' potential liability in damages in civil actions * * *." Section (A) of R.C. 2744.08 does not require a political subdivision to affirmatively demonstrate financial responsibility. Pursuant to the majority's opinion, parties not exempt from the certification requirements in R.C. 4509.72(A) must affirmatively demonstrate financial responsibility in order to be considered self-insured for the purposes of former R.C. 3937.18(K)(3), whereas any self-insurance program by a political subdivision is *by default* considered self-insured for the purposes of former section (K)(3).

{¶ 40} The description of the self-insurance programs of political subdivisions in R.C. 2744.08(A) is not a definition of self-insurance for the purposes of former R.C. 3937.18(K)(3). If the General Assembly had intended R.C. 2744.08(A) to be definitional for the purposes of former R.C. 3937.18(K)(3), it could have used language that so indicated with the clarity of R.C. 4509.72(A), which provides that any person with a sufficient number of cars registered in this state "may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the registrar of motor vehicles." Barring such language, we cannot rely on R.C. 2744.08(A) to hold that Dayton is self-insured within the meaning of the financial-responsibility law of the state.

{¶ 41} Finally, the syllabus language is at odds with the holding in the text of the opinion. The syllabus language suggests that it is proper to use R.C. Chapter 4509 in some manner to determine whether a party qualifies as self-insured: "A political subdivision is self-insured for purposes of former R.C. 3937.18(K)(3) if it qualifies as a self-insurer under R.C. Chapter 4509, although it is not required to obtain a certificate of self-insurance." The body of the opinion nevertheless refers exclusively to provisions outside R.C. Chapter 4509 in its determination that Dayton was self-insured: "Dayton complied with the financial-responsibility law that applies to political subdivisions by creating a self-insurance program for political-subdivision tort-liability purposes as authorized under former R.C. 2744.08(A). * * * Because former R.C. 3937.18(K)(3) does not specifically refer to R.C. Chapter 4509, we hold that Dayton is self-insured * * *." ¶ 20. The majority's syllabus language implies that some form of compliance with R.C. Chapter 4509 is necessary, but its opinion provides no indication of what form such compliance should take, referring exclusively to provisions outside that chapter.

{¶ 42} For the foregoing reasons, I would affirm the judgment of the court of appeals.

LANZINGER and CUPP, JJ., concur in the foregoing opinion.

---

Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., and Mark H. Gams, for appellant.

Patrick J. Bonfield, Dayton Law Director, John J. Danish, Deputy Law Director, and John C. Musto, Assistant City Attorney, for appellees city of Dayton and Earl Moreo.

Stephen L. Byron and John Gotherman, urging affirmance for amicus curiae, Ohio Municipal League.